IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RALPH MEADOWS,                    )
                                  )
           Plaintiff,             )
                                  )
       vs.                        )   Civil Action No. 2:17-195
                                  )
NANCY A. BERRYHILL, Acting        )
Commissioner of Social Security,  )
                                  )
           Defendant.             )
                                  )

AMBROSE, Senior District Judge

# OPINION and ORDER OF COURT

## SYNOPSIS

Pending before the Court are Cross-Motions for Summary Judgment. [ECF Nos. 12 and 16]. Both parties have filed Briefs in Support of their Motions. [ECF Nos. 13 and 17]. After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am denying Defendant's Motion for Summary Judgment [ECF No. 16] and granting Plaintiff's Motion for Summary Judgment [ECF No. 12].

## I. BACKGROUND

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act. On or about February 8, 2013, Plaintiff applied for DIB, and, on or about December 7, 2012, he applied for SSI. [ECF No. 8-2, at 11; ECF No. 8-5 (Exs. 5D-8D)]. Plaintiff alleged that he had been disabled since February 15, 2012, due to lumbar bulging discs L5-6

1

without myelopathy, varicocele cervicalgia, arthritis in cervical spine, numbness/tingling in left hand, carpal tunnel, migraines, depression, anxiety, PTSD, hypertension, and vitiligo. [ECF No. 8-3 (Exs. 8A, 10A); ECF No. 8-5 (Exs. 5D-8D)]. His date last insured was June 30, 2014. [ECF No. 8-2, at 14 (citing Ex. 12D)]. The state agency denied his claims initially, and he requested an administrative hearing. [ECF No. 8]. Administrative Law Judge ("ALJ") Joanna Papazekos held a hearing on September 10, 2014, at which Plaintiff was represented by counsel. [ECF No. 8-2, at 37-62]. Plaintiff appeared at the hearing and testified on his own behalf. Id. A vocational expert ("VE"), also was present at the hearing, but did not testify. Id. at 37-39. At the hearing, the ALJ admitted record exhibits 1A-21F into evidence and continued the hearing to obtain a consultative examination. Id. at 58-62. After proffer to Plaintiff's representative without objection, a Psychiatric and Intelligence Evaluation dated February 2, 2015, from consultative examiner, Steven Pacella, Ph.D., was marked as Ex. 23F. [ECF No. 8-2, at 11 (citing Exs. 13E, 23F)]. In addition, Plaintiff's representative submitted a treatment note dated September 3, 2014 from Dr. John Uribe, UPMC Comprehensive Care Associates. Id. (citing Ex. 22F). On March 13, 2015, the ALJ proffered interrogatories to the VE who had been present at the hearing. Id. (citing Exs. 14E, 12B). The VE submitted responses to the interrogatory requests, and the responses were proffered to Plaintiff's representative without written objection, comment, statement, or questions. Id. (citing Exs. 15E, 16E).

In a decision dated May 21, 2015, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled under the Act. [ECF No. 8-2, at 11-30]. Plaintiff requested review of the ALJ's determination by the Appeals Council, and, on December 12, 2016, the Appeals Council denied Plaintiff's request for review. [ECF No. 8-2, at 1-3]. Having exhausted all of his administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. [ECF Nos. 12 and 16]. The issues are now ripe for my review.

## II.    LEGAL ANALYSIS

### A.    STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §§ 404.1520, 416.920. The ALJ

3

must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id.

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

**B.   WHETHER THE ALJ IMPROPERLY REJECTED THE DIAGNOSIS OF INTELLECTUAL DISABILITY**

At Step Two of her analysis, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine and depression. [ECF No. 8-2, at 14-17]. The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that Plaintiff could stand and walk each no more than six out of eight hours and was limited to: no more than occasional balancing, stooping, kneeling, crouching, crawling, and climbing. He should have no more than moderate exposures to hazards and was limited to unskilled work with no precision

work and no reading or writing as an essential function of the job. He should have no face-to-face contact with the public and only occasional contact with co-workers and supervisors. [ECF No. 8-2, at 19-27]. The ALJ concluded that jobs existed in significant numbers in the national economy that Plaintiff could perform, including electrical accessories assembler, photocopying machine operator, and folding machine operator. Id. at 29.

Plaintiff argues that the ALJ erred when evaluating the medical evidence by improperly rejecting the consultative examiner's diagnosis of intellectual disability and then failing to account for that intellectual disability in her RFC and credibility determinations. [ECF No. 13, at 12-18]. Plaintiff contends that, as a result, the ALJ's finding of non-disability is not supported by substantial evidence. Id. After careful review, I agree.

As Plaintiff explains in his brief, the ALJ at the administrative hearing discussed with Plaintiff and his representative the fact that there was a gap in treatment records regarding Plaintiff's alleged mental health impairments. [ECF No. 8-2, at 53-61]. After some questioning, the ALJ stated that she was going to stop the hearing because she felt that a consultative examination was necessary due to the gap in Plaintiff's mental health records. Id. at 58. In this regard, the ALJ stated, "the reason, so that you and I are on the same page, is because . . . I have a gap in these records. I think it might be useful to have someone who could give me a comparison point from one time to the other." Id. The ALJ further explained:

> Because you haven't been going to treatment, especially mental health treatment, I don't have a good understanding of what your current situation is.
>
> I have documents from your prior situation. And – but there's kind of this gap where you stop seeing people. And that's okay. I just need to fill that gap with something. And so I will endeavor to get you set up with an appointment with one of Social Security's doctors.
>
> And this is for a mental health evaluation. So no one will lay a hand on you. It's just to kind of talk to you, the way that you talked to Dr. Cohen in the past.

Id. at 59. At the hearing, Plaintiff testified that he stopped treatment because he does not like to go outside or to be around other humans due to his alleged mental health impairments. Id. at 50-55.

On February 2, 2015, Plaintiff was examined by Steven Pacella, Ph.D. [ECF No. 8-8 (Ex. 23F)]. Dr. Pacella conducted a psychiatric and intelligence evaluation of Plaintiff and completed a six-page report as well as a medical source statement of ability to do work-related activities. Id. During his examination, Dr. Pacella administered the Wide Range Achievement Test (WRAT-IV) as well as the Wechsler Adult Intelligence Scale (WAIS-IV). the WRAT-IV results showed that Plaintiff earned a 3.2 grade equivalent in sight vocabulary (standard score 64, 1st percentile), and that he failed to recognize words, including laugh, straight, even, lame, bulk, and knowledge, making a preponderance of phonic errors. Id. at 4. The WAIS-IV examination showed a verbal comprehension index of 63; a perceptual reasoning index of 77; a working memory index of 71; a processing speed index of 76; and a full-scale IQ of 67. Id. The full-scale IQ fell at the 1st percentile within the range of mild intellectual disability. Id. at 5. Dr. Pacella stated that, "[a]ssuming adequate effort on today's testing, then current data reflect what would appear to be cognitive problems as well as psychiatric issues which could significantly interfere with the claimant's ability to function on a daily basis." Id. Dr. Pacella diagnosed Plaintiff with intellectual disability, mild (NOS) and unspecified depressive disorder (dysthymia). Id.

Despite Dr. Pacella's report and the test results reflected therein, and despite having ordered the consultative examination because of the gap in Plaintiff's treatment records, the ALJ concluded that the evidence did not substantiate Dr. Pacella's assessment of intellectual disability or Plaintiff's allegations of significant problems with cognitive functioning. [ECF No. 8-2 at 16]. Although admitting that Dr. Pacella's findings on their face would establish listing level severity

under Listing 12.05, the ALJ stated that there was no evidence of low intelligence prior to age 22; that Dr. Pacella did not assess Plaintiff with a reading disorder; that, although Plaintiff did not complete high school or obtain a GED, he was not in special education classes and dropped out due to racial issues; and that he testified his reading comprehension was better before his head injury. Id. In addition, the ALJ stated that "[f]urthermore, the spelling and grammar in claimant's handwritten statements in Section E of the documentary record are not consistent with a less than 70 IQ or a third grade reading level," and that the prior mental health treatment records did not report significant cognitive issues affecting functioning. Id. The ALJ also pointed out that Plaintiff admitted to engaging in daily activities such as living on his own, preparing meals, doing odd jobs for his landlord, managing his finances, and taking public transportation. Id. Accordingly, the ALJ concluded at step two of the analysis that intellectual disability was not a severe impairment. Id.

In assessing the validity of IQ scores, the ALJ is to consider the entire record before her. See Davis v. Colvin, No. CV 16-112, 2017 WL 1198381, at *5 (W.D. Pa. Mar. 30, 2017). As Plaintiff correctly sets forth, although an ALJ may reject IQ scores that are inconsistent with the record, she may not do so based on "personal observations of the claimant and speculative inferences drawn from the record." Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003). It also is improper to reject IQ scores that are otherwise consistent with the record, where there is no evidence the expert administering the test questioned or qualified the results, and no evidence of malingering or a deliberate attempt to distort the test results. See, e.g., Manigault v. Astrue, Civil Action No. 08-1409, 2009 WL 1181253, at *9 (W.D. Pa. Apr. 30, 2009); Miller v. Astrue, 2011 WL 2580516, at *6 n.10 (W.D. Pa. June 28, 2011); Davis, 2017 WL 1198381, at *5. Likewise, it is important to keep in mind that some activities of daily living are "not necessarily inconsistent" with

7

intellectual disability.  See Davis, 2017 WL 1198381, at *5; Markle, 324 F.3d at 187.

After considering the ALJ's reasoning as well as the parties' arguments and the evidence of record, I agree with Plaintiff that the ALJ's support for her findings with respect to intellectual disability are suspect at best.   Most glaring is the ALJ's statement that "the spelling and grammar in claimant's handwritten statements . . . are not consistent with a less than 70 IQ or a third grade reading level."  [ECF No. 13 at 16].   The ALJ does not cite any medical evidence or other authority supporting such a jump in logic.   Thus, the conclusion appears to be based solely on pure speculation and personal observation.   Moreover, and in any event, a review of the "handwritten statements" to which the ALJ refers reveals spelling errors (such as "migrain's"; "insadent"; "motavation"; "no" instead of "know"; "an" instead of "and"; and "there" instead of "they're") in addition to various cross outs and strikeovers.   [ECF No. 8-6 (Ex. 7E)].   This appears consistent with both the test results and Dr. Pacella's statement that Plaintiff made "a preponderance of phonic errors."   [ECF No. 8-8 (Ex. 23F) at 4].   There are no conflicting medical opinions of record, and Dr. Pacella never opined that Plaintiff was untruthful or malingering; rather, he concluded that the results reflected an accurate estimate of Plaintiff's intellect and sight vocabulary.  Id.

The ALJ's reliance on Plaintiff's activities of daily living to discredit Dr. Pacella's findings likewise is not dispositive given that many of those activities such as using public transportation, preparing simple meals, grocery shopping, and personal care are not necessarily inconsistent with low intellectual functioning.  See, e.g., Krasgrow v. Colvin, No. CV 15-1676, 2016 WL 7157210, at *5 (W.D. Pa. Dec. 8, 2016); Markle, 324 F.3d at 184-87; Ogin v. Comm'r of Soc. Sec., Civil Action No. 3:13-cv-01365, 2014 WL 2940599, at *11 (M.D. Pa. June 30, 2014).   It also appears incongruous that the ALJ ordered the consultative examination to fill "a gap" in the

evidence, and then turned around and used that same gap in evidence to help discredit Dr. Pacella's findings and the test results.

For all of the above reasons, I agree with Plaintiff that the reasons the ALJ gave for discrediting Dr. Pacella's report regarding intellectual disability and cognitive functioning include improper speculative inference and substitution of her lay opinion for that of the expert. Accordingly, remand is appropriate so that the ALJ can re-address this issue using the proper standards.

In reaching this conclusion, I disagree with Defendant that any error at step two is "harmless" because the ALJ went on to consider Plaintiff's impairments in making her RFC finding. Although errors at step two may be harmless when the ALJ goes on to consider the totality of a claimant's impairments in the RFC analysis, it is unclear that the ALJ did so here. Even if substantial evidence supported the ALJ's step-two finding that Plaintiff's mental impairments were non-severe, she "still was required to analyze what limitations her non-severe impairments caused in constructing h[er] RFC finding." Kobulnicky v. Astrue, Civil Action No. 11-1349, 2013 WL 1290955, at *7 (W.D. Pa. Mar. 27, 2013); see also 20 C.F.R. § 404.1545(a)(2). Although the ALJ included some non-exertional limitations associated with Plaintiff's depression and "psychological state" in the RFC finding, it is unclear whether she took into account any limitations with respect to cognitive functioning. [ECF No. 8-2, at 19-27]. Indeed, to the extent the ALJ revisits Dr. Pacella's findings in the RFC analysis, she gives them little weight and criticizes them for many of the same suspect reasons that she cited at step two. See id. at 27 (questioning Dr. Pacella's report based, inter alia, on Plaintiff's handwritten responses on the disability forms; his "capacity to correct errors" on his work history report; and his "mode of living").

In addition, I agree with Plaintiff that the ALJ's analysis regarding intellectual disability may

have impacted her credibility determination. Again, among other things, the ALJ cited Plaintiff's sporadic treatment as an indication his symptoms were not as serious as alleged, despite acknowledging his alleged reason for the gap at the hearing – *i.e.*, his fear of going outside or interacting with others – and ordering the consultative examination to fill in any holes. [ECF No. 8-2, at 25-26]. It also is unclear whether the ALJ took Plaintiff's low IQ into consideration when faulting him for actions such as non-compliance and providing inconsistent information to medical providers. For this reason as well, remand is appropriate.

### III. CONCLUSION

Under the Social Security regulations, a federal district court reviewing the decision of the Commissioner denying benefits has three options. It may affirm the decision, reverse the decision and award benefits directly to a claimant, or remand the matter to the Commissioner for further consideration. 42 U.S.C. § 405(g) (sentence four). In light of an objective review of all evidence contained in the record, I find that the ALJ's decision is not supported by substantial evidence because the ALJ failed to adequately address Plaintiff's alleged intellectual disability and credibility as set forth more fully herein. The case therefore is remanded for further consideration in light of this Opinion. For these and all of the above reasons, Plaintiff's Motion for Summary Judgment is granted to the extent set forth herein, and Defendant's Motion for Summary Judgment is denied. An appropriate Order follows

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RALPH MEADOWS,                                )
                                              )
            Plaintiff,                        )
                                              )
      vs.                                     ) Civil Action No. 2:17-195
                                              )
NANCY A. BERRYHILL, Acting                    )
Commissioner of Social Security,              )
                                              )
            Defendant.                        )
                                              )

AMBROSE, Senior District Judge

# ORDER OF COURT

AND NOW, this 28th day of March, 2018, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that Plaintiff's Motion for Summary Judgment [ECF No. 12] is GRANTED to the extent that this case is REMANDED to the Commissioner for further proceedings consistent with the Opinion attached hereto. Defendant's Motion for Summary Judgment [ECF No. 16] is DENIED.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
U.S. Senior District Judge